UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OVERILLE DENTON THOMPSON, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00154 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT-IN-PART AND DENY-IN-PART
## DEFENDANTS' MOTION TO DISMISS

Plaintiff Overille Denton Thompson, Jr., a Texas inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a Motion to Dismiss filed by Bobby Lumpkin (Lumpkin) and the Texas Department of Criminal Justice (TDCJ). (D.E. 11). For the reasons set forth below, it is respectfully recommended that this motion be **GRANTED-in-part** and **DENIED-in-part**.

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in TDCJ custody and is currently residing at the McConnell Unit in Beeville, Texas. The facts giving rise to Plaintiff's claims in this lawsuit occurred in connection with Plaintiff's current assignment.

In his original complaint, Plaintiff sues TDCJ and TDCJ Director Lumpkin. (D.E. 1). Plaintiff claims that Defendants recently implemented Texas Board of Criminal Justice Policy 03.91 (BP-03.91) in violation of his First Amendment, Eighth Amendment, due process, and equal protection rights. (D.E. 1, pp. 6-10). Plaintiff avers that Defendants' wrongful conduct will cause him to suffer financial loss and mental anguish due to any possible unauthorized and intentional deprivation of his personal property deemed to be barred as contraband by the BP-03.91. (*Id.* at 10). Plaintiff seeks injunctive relief in the form of compelling Defendants to reinstate their previous policy. (*Id.* at 10-11).

On October 12, 2021, Lumpkin and the TDCJ (collectively "Defendants") filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 11). Plaintiff subsequently filed his response to the motion. (D.E. 15).

## III.    LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (D.E. 16). Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55.

Typically, when ruling on a Rule 12(b)(6) motion to dismiss, courts are limited to the contents of the pleadings and any attachments. *Brand Coupon Network, LLC v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014)*. However, courts may also consider as part of a Rule 12(b)(6) motion "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). "Taking judicial notice of public records directly relevant to the disputed issue is proper and does not transform the Rule 12(b)(6) motion into one for summary judgment." *Jathanna v. Spring Branch Independent School Dist.*, H-12-1047, 2012 WL 6096675, at *3 (S.D. Tex. Dec. 7, 2012).

## IV.    PLAINTIFF'S ALLEGATIONS AND BP-03.91

Plaintiff's allegations reference BP-03.91, which he indicates is an overly oppressive policy prohibiting offenders from possessing certain sexually explicit items and images. (D.E. 1, at 2). Amended BP-03.91 was promulgated on June 25, 2021 and became effective on August 1, 2021.[1] In taking judicial notice of this policy, the undersigned may consider it in deciding the present Motion to Dismiss without converting the motion into one for summary judgment. *See Jathanna*, 2012 WL 6096675, at 3, n.1 (S.D. Tex. Dec. 7,

---

[1] *See* Texas Department of Criminal Justice, https://www.tdcj.texas.gov/documents/policy/BP0391.pdf (BP-03.91).

2012); *Prison Legal News v. Livingston*, No. C-09-296, 2010 WL 1610109, at *6, n.4 (S.D. Tex. Apr. 21, 2010).

Amended BP-03.91 sets forth the TDCJ's policy prohibiting inmates from receiving incoming correspondence that contains sexually explicit images. BP-03.91 at 3, 10, 12. Under the revised policy, the term "'Sexually Explicit Image" is defined as:

> [M]aterial in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the contest of sexual activity; or sexual behavior from any vantage point.

*Id.* at 3. The amended policy provides that all incoming correspondence containing a sexually explicit image "shall be disapproved for … receipt." *Id.* at 10.

Amended BP-03.91 further sets forth procedures: (1) for reviewing incoming correspondence or publications in the mailroom; and (2) for inmates to appeal any decision denying incoming correspondence or publications. *Id.* at 10, 14-15. Specifically, "[a]ll publications are subject to inspection by the [Mail System Coordinators Panel (MSCP] and by unit staff" with the MSCP having "the authority to accept or reject a publication for content, subject to review by the [Director's Review Committee (DRC)]." *Id.* at 11. A publication may be rejected if it contains sexually explicit images. *Id.* at 12. Under the amended policy, however, "subject to review by the MSCP on a case-by-case basis, publications constituting educational, medical, scientific, or artistic materials, including anatomy, medical reference books, general practitioner reference books or guides, *National*

*Geographic*, or artistic reference material depicting historical, modern, or post-modern era are, may be permitted." *Id.*

According to Plaintiff, amended BP-3.91 impermissibly broadens the definition of sexual explicitness. (*Id.* at 4). Plaintiff alleges that amended BP-03.91 will effectively "oppress the creativity of those Texas prisoners who draw and aspire to be artists." (*Id.* at 6). In addition, Plaintiff alleges that amended BP-03.91 "will create an environment conducive for homosexuality and other deviant sexual behavior," which is "detrimental to the rehabilitation process." (*Id.* at 7). Plaintiff further avers that: (1) inmates who invested money in outside purchases will lose "thousands of dollars in personal property with no hope of reimbursement"; and (2) no federal or state prisoners "across the entire United States of America" have been forced to endure a policy as oppressive as BP-03.91. (*Id.* at 8-9).

Plaintiff has attached to his complaint a "Notice to All Inmates to Remove Contraband," effective August 1, 2021. (D.E. 1-1, p. 3). The Notice advised inmates they could not possess or receive by mail "material in publications, photographs, drawings or any type of image which … "[d]epicts sexual behavior," "[i]s intended to cause sexual arousal," or "[s]hows nudity[.]" (*Id.*). The Notice further advised inmates that all such items would be considered contraband and that inmates would be subjected to disciplinary cases by possessing these items. (*Id.*). Under the Notice, inmates were instructed to remove all of these items from their possession by August 1, 2021, and to refer to BP-03.91 for further details. (*Id.*).

According to Plaintiff, the revised policy has adversely impacted the prison population by causing "stress and anxiety from the impending loss of personal property and constitutional rights." (*Id.*). Plaintiff states that he "will lose 8 photo albums and 9 magazines containing non-nude sexually explicit images which he has amassed during the 5 years while incarcerated in the TDCJ." (*Id.* at 2).

Plaintiff filed a Step 1 grievance, dated July 9, 2021, complaining about the implementation of revised BP-03.91 and seeking a return to the former policy. (*Id.* at 5-6). Plaintiff's Step 1 grievance was screened on the basis that the issue presented was not grievable. (*Id.* at 6). Plaintiff's Step 2 grievance, filed on August 12, 2021, was not considered or otherwise processed by prison officials. (*Id.* at 7-8).

## V.    DISCUSSION

### A.    Official Capacity Claims and the Eleventh Amendment

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Id.* The Eleventh Amendment bar, when it applies, implicates the Court's subject-matter jurisdiction. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).

### (1)  TDCJ

Defendants contend that the TDCJ is immune from § 1983 liability under the Eleventh Amendment.  (D.E. 11, p. 3).   The Eleventh Amendment bars suit against state entities such as the TDCJ regardless of whether money damages or injunctive relief is sought under § 1983. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 11) be granted on this issue and that Plaintiff's § 1983 claims against the TDCJ be dismissed without prejudice.

### (2)  Director Lumpkin

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).   As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Here, Plaintiff only seeks relief in the form of prospective injunctive relief.  (D.E. pp. 10-11).  *Ex parte Young* provides "an equitable exception to Eleventh Amendment sovereign immunity ... [that] allows plaintiff to sue a state official, in his official capacity,

in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159–160 (1908)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

Under the *Ex Parte Young* exception, plaintiffs may bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. at 155-56). To be a proper defendant, the state official must have "some connection" to the law's enforcement. *Ex parte Young*, 209 U.S. at 157. "The required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the [law] in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). *Ex parte Young* only applies, therefore, when the state official has "some connection to the state law's *enforcement*, which ensures that the suit is not effectively against the state itself." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (internal quotations and citations omitted) (emphasis added).

Defendants contend in their Motion to Dismiss that the *Ex parte Young* exception is inapplicable because Lumpkin had no connection to the drafting or implementation of BP-03.91. (D.E. 11, p. 4). Defendants contend, therefore, that Plaintiff's claims against Lumpkin in his official capacity are barred by the Eleventh Amendment and subject to dismissal for lack of subject matter jurisdiction. (*Id.*). Plaintiff responds that Lumpkin, as TDCJ's director, is responsible for executing BP-03.91 and, therefore, has "some connection" with its enforcement. (D.E. 15, p. 5).

According to Defendants, BP-03.91 was promulgated by the Board and enforced at the unit level. (D.E. 11 at 4). Defendants suggest that the Board, as opposed to the TDCJ director, should be proper defendants to sue for injunctive relief. However, even assuming that the Board is the policymaking arm of the TDCJ and was responsible for promulgating BP-03.91, that alone does not suggest members of the Board are amenable to suit as opposed to Lumpkin. *See Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021) (concluding a state official's role in promulgating a policy does not render the official "suable *under Ex parte Young*" because promulgation, "standing alone, is not the power to enforce that policy").

The undersigned agrees with Plaintiff's contention that Lumpkin, as the TDCJ director, may bear some responsibility with regard to enforcing this policy and/or having a willingness or capability to exercise that duty. TDCJ Director Lumpkin may have a stronger connection to enforcing BP-03.91, at least as compared to members of the Board, and is more likely capable of providing the requested injunctive relief as to Plaintiff's

claims challenging that Board policy. Accordingly, the undersigned respectfully recommends that Lumpkin's Motion to Dismiss (D.E. 11) be denied to the extent he claims that Plaintiff's claims against Lumpkin are barred by the Eleventh Amendment.[2]

## B.    First Amendment

It is well established that the constitutional rights of prisoners are more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Although prison inmates do not shed all of their constitutional protections by virtue of their confinement, such rights may be circumscribed to further legitimate penological objectives. Specifically, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974).

In *Turner v. Safely*, 482 U.S. 78 (1987), the Supreme Court established the applicable test for evaluating the constitutionality of regulations that infringe on a prisoner's First Amendment rights. The Court found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89. Even if a policy or regulation

---

[2] Plaintiff appears to request in the alternative permission to amend his complaint and name the proper defendants should it be determined that Lumpkin has no connection in enforcing BP-03.91. (D.E. 15, p. 5). The undersigned agrees that the Court should permit Plaintiff an opportunity to amend his complaint on this issue in the event the presiding district judge, the Honorable David S. Morales, concludes that Lumpkin is not the proper defendant. As discussed below, however, the undersigned recommends that Plaintiff has failed to state a claim for relief. Consequently, if the undersigned's recommendations as to the merits of Plaintiff's claims are adopted, any attempt to name another party as the proper defendant would be rendered moot.

impinges on an inmate's constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests. *Henthorn v. Swinson,* 955 F.2d 351, 353 (5th Cir. 1992) (citing *Turner,* 482 U.S. at 89). Thus, when reviewing a prison policy that restricts the flow of publications to prisoners, the appropriate question is whether that policy is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 404 (1989). In *Thornburgh,* the Supreme Court noted that administrators are afforded substantial deference regarding policies that preserve internal order and security by controlling the types of materials that are allowed into a prison. *Id.* at 416.

In evaluating the constitutionality of a prison regulation that impinges on an inmate's constitutional rights, a court "must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (citing *Thornburgh,* 490 U.S. at 414-15). Under *Turner,* the reasonableness of a practice is evaluated by considering four factors:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Turner,* 482 U.S. at 89-91. Rationality is the controlling factor, and a court need not weigh each factor equally. *Mayfield v. Tex. Dep't of Crim. Justice,* 529 F.3d 599, 607 (5th Cir.

2008).  Further, the court's analysis must give due regard to the decisions of prison officials: "prison administrators …, and not courts, [are] to make the difficult judgments concerning institutional operations."  *Turner,* 482 U.S. at 89.

In their Motion to Dismiss, Defendants rely on Fifth Circuit authority which "determined that withholding sexually oriented materials reduces nonconsensual sexual activity and encourages rehabilitation."  (D.E. 11, p. 5).  Defendants contend further that Plaintiff alleges no facts to "demonstrate how a ban on sexually oriented materials in prison will prohibit an artist from furthering their skill."  (*Id.*).

Plaintiff responds that the limitations of his First Amendment freedom under amended BP-03.91 is unnecessarily broad.  (D.E. 15, p. 7).  Plaintiff further responds that his First Amendment claim should not be dismissed as conclusory because he has alleged amended BP-03.91 will operate to oppress the creativity of Texas prisoner who aspire to be artists.  (*Id.* at 15).

In *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir. 1978), the Fifth Circuit considered prison officials' authority to censor incoming publications that they considered pornographic.  The Fifth Circuit rejected the argument that prison officials could ban only materials that had been judicially declared obscene, noting that a prisoner's First Amendment rights "cannot be evaluated without reference to that environment and to the type of audience it involves."  *Id.* at 762.  The *Guajardo* court concluded that prison officials could limit, consistent with the First Amendment, access to sexually explicit materials after recognizing that that nonconsensual homosexuality was a significant

problem in Texas prisons, that prison officials undoubtedly had a legitimate rehabilitation interest in preventing such activity, and that the introduction of pornographic material could exacerbate the situation. *Id.* The *Guajardo* court explained, however, that the limits on a prisoner's First Amendment rights could not be guided solely by "the whims of administrators," thus necessitating the following guidelines:

> Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through proper administrative channels."

*Id.* (citations omitted).

Subsequently, in *Thompson v. Patteson*, 985 F.2d 202 (5th Cir. 1993), a Texas inmate claimed that his First Amendment rights were violated when certain books and magazines were withheld from him under prison regulations because they were deemed to encourage deviate, criminal sexual behavior. *Id.* at 204. The prison regulations at issue ordinarily denied inmates from receiving publications containing graphic depictions of homosexuality, sadomasochism, and incest but ordinarily admitted publications covering the activities of sexual rights groups. *Id.* at 204, 206.

The *Thompson* court concluded that the inmate's claims were foreclosed by *Guajardo* and by Supreme Court precedent recognizing that a prisoner retains First Amendment rights not inconsistent with his prisoner status or the prison's legitimate

penological objectives. *Id.* at 206-07. Under *Thompson*, therefore, prison officials will not violate an inmate's First Amendment rights by limiting a prisoner's access to sexually explicit materials even if they are not obscene in order to further a legitimate interest in preventing deviate, criminal sexual behavior in the prison population. *Id.* at 205-06.

Relying on *Thompson*, the Fifth Circuit rejected an inmate's First Amendment claim where he sought to challenge a prison policy prohibiting sexually explicit materials which, when applied, denied him access to certain images. *Stroble v. Livingston*, 538 F. App'x 479, 480 (2013). The *Stroble* court explained:

> Though Stroble complains about prison officials' interpretation of the policy regarding sexually explicit images, prison rules "necessarily confer a certain degree of discretion on prison authorities" to determine which constitutes impermissible sexually explicit material. Moreover, even if officials did not follow prison policy, this does not, in itself, amount to a constitutional violation. Accordingly, this claim is frivolous.

*Id.*

A Louisiana district court recently considered an inmate's challenge to a prison regulation revising its definition of sexually explicit material and prohibiting pictures of women in swimwear, lingerie, and suggestive poses. *Mills v. LeBlanc*, No. 21-418, 2021 WL 3572148, at *2 (E.D. La. Jul. 15, 2021), *adopted* 2021 WL 3566434 (E.D. La. Aug. 11, 2021). Similar to Plaintiff, inmate Logan Mills challenged the prison policy based on its "overly broad definition of what constitutes sexually explicit material." *Id.* at 16. In

concluding that Mills' allegations were insufficient to survive a frivolousness review,

Magistrate Judge Donna Phillips Currault explained that:

> The Fifth Circuit has repeatedly rejected arguments like those made by Mills in his challenge to the discretionary interpretation and application of [prison] regulations prohibiting sexually explicit materials. Mills' disagreement with [the policy's] definition of sexually explicit material is insufficient to establish that the regulation is not rationally based on a legitimate penological goal, including the protection of female guards and prevention of inappropriate sexual behavior among inmates. Likewise, his assertion that [the policy's] definition of sexually explicit includes material that is not erotic or meant to sexually excite the reader is insufficient. As the Fifth Circuit has made clear, there is no requirement that prison regulations only prohibit materials that would be considered obscene. Some pictures depicting women in swimwear, lingerie, and suggestive poses can be sexually explicit even without being blatantly erotic or obscene.

*Id.* at 17.

Here, Plaintiff's First Amendment challenge to what he describes as an over broad definition of sexual explicitness fails to state a claim for relief. As explained in *Mills*, "the First Amendment does not mandate that prison officials provide definitions or explain the reasoning behind their regulations to inmates." *Mills*, 2021 WL 3572148, at *17. Instead, controlling Supreme Court and Fifth Circuit precedent recognize that prison officials must be afforded deference in promulgating policies necessary to maintain discipline and legitimate penological goals. *Id.* (citing *Thornburgh*, 490 U.S. at 418; *Thompson*, 985 F.2d at 207). Plaintiff's allegations challenging the definition of "Sexual Explicit Image" in BP-03.91 as overbroad are insufficient to show that the policy is not rationally related to legitimate penological goals such as maintaining discipline and preventing inappropriate

sexual behavior among inmates. *See Thornburgh*, 490 U.S. at 413; *Mills*, 2021 WL 3572148, at *17.

Plaintiff nevertheless premises his First Amendment claim on his allegation that amended BP-03.91 will effectively "oppress the creativity of those Texas prisoners who draw and aspire to be artists." (D.E. 1 at 6). Plaintiff's allegation is conclusory as he provides no specific facts to show how a ban on sexually-oriented materials in prison will prohibit artists from furthering their skills. In addition, amended BP-03.91 provides a mechanism to permit inmates the ability to possess publications consisting of artistic materials, subject to review by the MSCP. *See* BP-03.91 at 12.

Accepting Plaintiff's allegations as true, the undersigned concludes that his First Amendment claim challenging amended BP-03.91 is subject to dismissal on the grounds it is foreclosed by Fifth Circuit precedent and/or is conclusory. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 11) be granted and that Plaintiff's First Amendment claim be dismissed with prejudice for failure to state a claim for relief.

### C.    Deliberate Indifference

Plaintiff claims that amended BP-03.91 is detrimental to the rehabilitation process and was, therefore, enacted with deliberate indifference to his psychological concerns in violation of the Eighth Amendment. (D.E. 1, p. 7). The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation

occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

In order to establish that amended BP-03.91 was enacted with deliberate indifference to Plaintiff's health, he must show that the policy is facially unconstitutional or promulgated "with deliberate indifference to the "known or obvious consequences' that constitutional violations would result." *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference is beyond negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentional oversight.'" *White v. Briones*, No. H-09-2734, 2011 WL 66134, at *15 (S.D. Tex. Jan. 7, 2011) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Thus, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or

negligent do not amount to deliberate indifference." *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).

Defendants contend that they did not disregard a known or obvious consequence because the Fifth Circuit already has concluded that the banning of sexually explicit materials serve a legitimate penological interest. (D.E. 11, p. 6). Plaintiff responds that his allegations are sufficient in that he states the new policy will create an environment conducive to homosexuality and deviant sexual behavior. (D.E. 15, pp. 7-8).

Plaintiff provides no allegations or arguments to suggest that amended BP-03.91 is facially unconstitutional. He sets forth his belief that amended BP-03.91 will have adverse effects on the psychological well-being of Texas prisoners. Plaintiff alleges no specific facts, however, to indicate that Lumpkin or any other TDCJ official was aware of any known or obvious consequences to the health and psychological well-being of inmates and yet disregarded such risk when amending BP-03.91. As discussed above, the Fifth Circuit consistently has recognized that prison officials may limit, consistent with the First Amendment, access to certain sexually explicit materials based on legitimate penological interests such as nonconsensual sexual activity and promoting rehabilitation. *See Thompson*, 985 F.2d 202; *Guajardo*, 580 F.2d at 762; *Stroble*, 538 F. App'x at 480.

Accepted as true, Plaintiff's allegations at best suggest that amended BP-03.91 may be ineffective in promoting overall psychological well-being among inmates. However, they fall short of stating Defendants' deliberate indifference to any known or obvious consequences to an inmate's health. The undersigned concludes, therefore, that his Eighth

Amendment deliberate indifference claim challenging amended BP-03.91 is subject to dismissal. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 11) be granted and that Plaintiff's Eighth Amendment claim be dismissed with prejudice for failure to state a claim for relief.

### D.   Due Process

Plaintiff claims that amended BP-03.91 violated his procedural due process rights on the basis that he will lose "thousands of dollars in personal property with no hope of reimbursement." (D.E. 1, p. 8). Defendants contend in their Motion to Dismiss that Plaintiff cannot state a due process claim for the negligent or intentional deprivation of property because there exists an adequate post-deprivation remedy. (D.E. 11, p. 7). Plaintiff responds that Defendants rely on caselaw which is inapplicable to his due process claim. (D.E. 15, pp. 12-13).

Defendants cite the Supreme Court's decision in *Zinermon v. Burch*, 494 U.S. 113 (1990), which holds that a state actor's negligent or intentional deprivation of a prisoner's property, resulting from random and unauthorized action of that state actor, does not constitute a due process violation if there exists an adequate state post-deprivation remedy. *Id.* at 115 (1990) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981)) (other citation omitted) (referred to below as the *Parratt/Hudson* doctrine); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1984).

The undersigned, however, agrees with Plaintiff on his argument that the *Parrott/Hudson* doctrine does not apply to his due process claim. The confiscation of a prisoner's property pursuant to a prison directive or policy is not a random or unauthorized act for purposes of the *Parratt/Hudson* doctrine, and therefore, the existence of an adequate post-deprivation state court remedy does not preclude a § 1983 action for a due process violation. *See Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. June 25, 2020); *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004). "Conduct is not 'random or unauthorized … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Schwarzer*, 810 F. App'x at 359 (citing Zinerman, 494 U.S. at 138). Here, Plaintiff's claim does not refer to property being taken under a random, unauthorized act by a state employee but rather pursuant to amended BP-03.91. Accordingly, Defendants' Motion to Dismiss (D.E. 11) is denied as to Plaintiff's due process claim to the extent they rely on the *Parratt/Hudson* doctrine.

Under the screening provision of § 1915(e)(2), the undersigned may consider whether Plaintiff's procedural due process claim should be dismissed on other grounds. This section mandates dismissal "at any time" any action which "fails to state a claim on which relief may be granted" or "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B) (i), (ii).

When a prisoner's property is confiscated pursuant to prison policy, the constitutional requirements of due process are satisfied when the prisoner is afforded ample notice and sufficient opportunity to object to the confiscation of his property by way of the

prison grievance system. *See Allen v. Thomas*, No. Civ.A. H-02-3132, 2005 WL 2076033, at *9 (S.D. Tex. Aug. 26, 2005). "Post-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy these requirements with respect to the confiscation of property pursuant to prison regulations." *Matez v. Foley*, No. 2:17-cv-134-Z, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) (citing *Allen*, 2005 WL 2076033, at *9) (other citations omitted).

The Fifth Circuit has found permissible prison policies excluding publications with explicit sexual content, as long as the following guidelines were followed: (1) notification of the decision excluding the publication; (2) a reasonable opportunity to challenge the initial decision; and (3) an ultimate decision rendered by a disinterested party. *Guajardo*, 580 F.3d at 762, n.10. Amended BP-03.91 provided inmates like Plaintiff these protections by setting forth procedures for inmates to appeal any decision denying incoming correspondence or publications. BP-03.91 at 12, 16-17. As part of the review process, inmates may seek review of decisions to reject publications for containing sexually explicit images by the DRC. *Id.* at 11-12.

Plaintiff alleges no facts to indicate that officials have as yet confiscated any personal property under BP-03.91 or that he would not be prohibited from appealing any future action to confiscate personal properly under the policy. Plaintiff's allegations reflect that his Step 1 grievance seeking to challenge amended BP-03.91 was screened out on the basis that the issue presented was not grievable. (D.E. 1-1, pp. 5-6) Similar to the allegations set forth in his complaint, however, Plaintiff did not grieve actions taken by

prison officials where they actually confiscated property under the policy. Plaintiff otherwise provides no allegations to suggest that his administrative remedies under TDCJ's grievance procedures would be unavailable should personal property be taken under amended BP-03.91.

Plaintiff's allegations, accepted as true, fail to state a procedural due process claim at this time regarding the possible confiscation of his personal property under BP-03.91. Accordingly, the undersigned respectfully recommends that this claim be dismissed pursuant to § 1915(e)(2)(B).

### E.    Equal Protection

Plaintiff claims that his equal protection rights have been violated because no federal or state prisoners "across the entire United States of America" have been forced to endure a policy as oppressive as amended BP-03.91. (D.E. 1 at 9). The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).

To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted). If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny." *Id.* at

353-54. If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id.* at 354.

Furthermore, to establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007). The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Wood*, 836 F.3d at 538–39 (internal quotation marks and citation omitted).

Defendants contend in their Motion to Dismiss that Plaintiff's equal protection claims fails because: (1) all Texas prisoners are subjected to the same policy; and (2) he alleges nothing to show that prison officials enacted the policy with a discriminatory purpose. (D.E. 11, pp. 7-8). Plaintiff responds that his allegations are sufficient to state an equal protection claim. (D.E. 15, p. 13).

Plaintiff's equal protection claim does not involve a suspect class being treated differently under amended BP-03.91. The policy at issue only governs Texas prisoners in TDCJ custody and does not apply to federal prisoners or state prisoners incarcerated in other states. Plaintiff's conclusory allegations fail to suggest that similarly situated TDCJ prisoners are treated more favorably under the policy or that the policy was enacted with a discriminatory purpose. Plaintiff's allegations, accepted as true, fail to state a plausible

equal protection claim. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 11) be granted and that Plaintiff's equal protection claim be dismissed with prejudice for failure to state a claim for relief.

### F.      Qualified Immunity

Defendants further contend that Lumpkin is entitled to qualified immunity which shields him from constitutional liability in his individual capacity. (D.E. 11, pp. 8-9). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S. at 236. In this case, as discussed above, Plaintiff has failed to state a claim for relief with respect to his First Amendment, Eighth Amendment, due process, and equal protection claims. It is therefore not necessary to examine whether Lumpkin's actions were objectively reasonable with respect to these claims. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 11) be granted on the issue of qualified immunity as to these claims.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends further that Defendants' Motion to Dismiss (D.E. 11) be **GRANTED-in-part** and **DENIED-in-part**. Defendants' Motion to Dismiss (D.E. 11) should be **GRANTED** to the extent that: (1) Plaintiff's § 1983 claims against the TDCJ be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and (2) Plaintiff's First Amendment, Eighth Amendment, and equal protection claims against Lumpkin in his individual and official capacities be **DISMISSED with prejudice** for failure to state a claim for relief and/or on qualified immunity grounds.

The undersigned respectfully recommends further that Defendants' Motion to Dismiss (D.E. 11) be **DENIED** to the extent that: (1) Plaintiff's claims against Lumpkin in his official capacity are not barred by the Eleventh Amendment; and (2) Defendants rely on the *Parratt/Hudson* doctrine as a basis for dismissal of Plaintiff's due process claim.

Pursuant to § 1915(e)(2)(B), the undersigned respectfully recommends further that Plaintiff's due process claim against Lumpkin in his individual and official capacities be **DISMISSED** for failure to state a claim for relief and/or on qualified immunity grounds.

Respectfully submitted on July 6, 2022.

Julie K. Hampton
United States Magistrate Judge

# NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).